# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| GLOBAL TOWER ASSETS, LLC, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Docket no. 1:14-cv-00085-GZS |
| | ) |
| TOWN OF ROME, MAINE, et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

## ORDER ON MOTION TO DISMISS

Before the Court is Defendants Town of Rome, Maine and the Rome Planning Board's Motion To Dismiss (ECF No. 9). For the reasons explained herein, the Motion To Dismiss is GRANTED.[1]

## I.    STANDARD OF REVIEW

Defendants' Motion claims that the Court lacks subject matter jurisdiction over Count I of the Complaint and that all of the counts fail to state a claim upon which relief can be granted. As a result, Defendants seek dismissal under Federal Rules of Civil Procedure 12(b)(1) & (6).[2]

The Federal Rules of Civil Procedure require only that a complaint contain "a short and plain statement of the grounds for the court's jurisdiction . . . a short and plain statement of the

---

[1] Also before the Court are Plaintiffs' Motion For Leave To File A Surreply Memorandum (ECF No. 13) and Plaintiffs' Motion To Strike Documents Submitted With Defendants' Reply (ECF No. 14). To the extent Plaintiffs requested to file a surreply in order to address new arguments raised by Defendants' Reply, the Court finds that Plaintiffs were able to develop any additional arguments through the briefing submitted and therefore deems the Motion MOOT. Because the Court did not rely on or reference documents attached to any briefing, with the exception of the document specifically addressed below, the Court determines that the Motion To Strike is MOOT.

[2] Although Defendants claim that the Court lacks subject matter jurisdiction because the action of the Town of Rome was not "final," a prerequisite to filing suit under the TCA, the First Circuit has not addressed whether the finality requirement is jurisdictional. See Omnipoint Holdings, Inc. v. City of Cranston, 586 F.3d 38, 45 n.4 (1st Cir. 2009). Because the Court finds that the outcome would be the same under either Fed. R. Civ. P. 12(b)(1) or 12(b)(6), the Court need not, and does not, decide whether the finality requirement is jurisdictional.

claim showing that the pleader is entitled to relief; and a demand for the relief sought[.]" Fed. R. Civ. P. 8(a)(1)-(3). The Court assumes the truth of the complaint's well-pleaded facts and draws all reasonable inferences in plaintiffs' favor. Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). Under Rule 12(b)(6), the Court "may consider only facts and documents that are part of or incorporated into the complaint." United Auto., Aero., Agric. Impl. Workers of Am. Int'l Union v. Fortuno, 633 F.3d 37, 39 (1st Cir. 2011) (internal citations omitted).

A viable complaint need not proffer "heightened fact pleading of specifics," but in order to survive a motion to dismiss it must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). In considering a motion to dismiss, the Court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Plaintiffs must include enough facts supporting a claim for relief that "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010)); see also Iqbal, 556 U.S. at 678 (stating that the Court need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements"). At this point in the litigation, "the determination of whether an issue is trialworthy simply is not the same as the determination of whether a plaintiff states a claim upon which relief can be granted." Bodman v. Maine, Dept. of Health & Human Servs., 720 F. Supp. 2d 115, 121 (D. Me. 2010) (denying motion to dismiss a hostile work environment claim).

With respect to Rule 12(b)(1), a court must dismiss a case that does not fall within its subject matter jurisdiction. Thus, faced with a challenge to subject matter jurisdiction, the burden falls on the party invoking jurisdiction "clearly to allege facts demonstrating that he is a proper party to invoke federal jurisdiction." Marcello v. Maine, 464 F. Supp. 2d 38, 41 (D. Me. 2006) (citing Dubois v. United States Dep't of Agric., 102 F.3d 1273, 1281 (1st Cir. 1996)). Furthermore, the Court may consider extrinsic materials when considering a motion to dismiss under Rule 12(b)(1). See Marcello, 464 F. Supp. 2d at 41 (citing Aversa v. United States, 99 F.3d 1200, 1209-10 (1st Cir. 1996) ("In ruling on a motion to dismiss for lack of subject matter jurisdiction . . . the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff. . . . In addition, the court may consider whatever evidence has been submitted . . . .")).

## II.      BACKGROUND

### A.      The Parties

Defendant the Town of Rome (the "Town" or "Rome") is a municipality in Kennebec County, Maine that regulates certain aspects of land use within the Town's boundaries by means of an ordinance known as the "Rome Wireless Facilities Siting Ordinance" (the "Wireless Ordinance"). (Compl. (ECF No. 1) ¶ 3.) Defendant the Rome Planning Board (the "Planning Board") is the municipal body responsible for reviewing and granting certain approvals under the Wireless Ordinance. (Id. ¶ 4.) The Wireless Ordinance provides that "[a]dministrative appeals and variance applications submitted under this Ordinance shall be subject to the standards and procedures established by the Town of Rome Board of Appeals." (Wireless Ordinance, Section 15.B (ECF No. 9-1) at PageID # 94.)[3] By operation of Maine law (see Section III.A.), the Town

_____

[3] Ordinarily, a court may not consider any documents outside of the complaint or not expressly incorporated in the complaint on a 12(b)(6) motion to dismiss, without converting the motion into one for summary judgment. Fed. R.

3

of Rome has a Board of Appeals with jurisdiction to hear any appeal of a decision of the Planning Board rendered pursuant to the Wireless Ordinance.

Plaintiff Global Tower Assets, LLC ("Global Tower") works with federally licensed providers of wireless communication services, such as Plaintiff Northeast Wireless Networks, LLC ("Northeast"), to identify and acquire appropriate sites for the development and construction of personal wireless telecommunication facilities.  (Id. ¶ 14.)  Global Tower has an agreement with Northeast to provide those services, including within the Town of Rome and surrounding area. (Id.)  The Federal Communication Commission ("FCC") has issued a license to Northeast to provide personal communications systems ("PCS") in the 1900 megahertz ("mHz") spectrum[4] to the area in and around the Town pursuant to 47 U.S.C. § 151.  (Id. ¶¶ 13, 15.)

## B.    Wireless Coverage in Rome

No wireless service provider provides PCS in Rome or the surrounding area, although there are two cellular wireless providers that provide cellular service.  (Compl. ¶¶ 12, 13.)  Global Tower and Northeast state that they "have identified a specific geographical area in the Town of Rome where there are significant gaps in service coverage within the meaning of the TCA for personal

---

Civ. P. 12(b); Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001).  Nonetheless, there is a narrow exception "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Alternative Energy, Inc., 267 F.3d at 33 (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). When a document is central to a plaintiff's complaint, the document "merges into the pleadings" and may be properly considered by the court in determining a motion to dismiss.  See id.  In this case, the Wireless Ordinance is repeatedly referenced in the Complaint and is central to Plaintiffs' claims.  (See, e.g., Complaint ¶¶ 3, 4, 24-28, 30, 31, 44, 50, 60, 62, 63, 68, 72, 73, 79, 80, 82-85.)  Thus, in deciding the pending motion, the Court considers the Wireless Ordinance without converting the instant 12(b)(6) Motion into one for summary judgment and also notes that the Court could consider the document on a 12(b)(1) Motion. See Marcello, 464 F. Supp. 2d at 41.

[4]  There are two major types of technology used to provide personal wireless services: (i) cellular technology; and (ii) personal communications systems ("PCS") technology.  Cellular technology operates in the 800 mHz spectrum, whereas PCS technology operates in the 1900 mHz spectrum.  PCS operates by transmitting low power radio signals between users' devices and wireless service providers' antennas mounted on towers, poles, buildings, or other structures.  (Compl. ¶¶ 10-11.)  PCS providers need a greater number of cells in order to provide adequate service than cellular providers.

4

wireless services, and more specifically, PCS due to a lack of a cell site in this area." (Id. ¶ 17.) Global Tower and Northeast state that the significant service coverage gap poses a public safety risk for individuals and public safety organizations that rely on wireless communications in reporting emergency situations. (Id. ¶ 18.)

Global Tower and Northeast surveyed the Town of Rome for potential collocation opportunities on preexisting structures, but no such structures exist. (Id. ¶ 20.) Global Tower and Northeast analyzed the former Grange Hall and Rome Fire Station, but those structures do not have sufficient height to send and receive PCS. (Id.) Global Tower and Northeast also analyzed whether they could collocate on the only existing telecommunications tower in Rome, the "Hampshire Hill Tower." (Id. ¶ 21.) Plaintiffs conducted radio frequency ("RF") engineering analysis at the next available height on the Hampshire Hill Tower and determined that a new telecommunications tower would need to be constructed in Rome to provide PCS. (Id.)

Global Tower and Northeast conducted testing and analysis to determine the appropriate location for a new telecommunications tower site. (Id. ¶ 22.) On January 4, 2013, Global Tower secured a Lease Agreement for the construction and operation of a communications tower on a 10,000 square foot portion of a property in Rome (the "Leased Area"). (Id.) Global Tower and Northeast have proposed a 190-foot telecommunications tower within a 5,625 square foot fenced compound area located in the Leased Area. (Id. ¶ 23.) The telecommunications tower is designed to accommodate up to five wireless service providers. (Id.)

### C.    Proceedings Before The Planning Board

On April 8, 2013, Global Tower and Northeast submitted an application for review by the Rome Planning Board requesting approval to construct a wireless telecommunications tower in the Leased Area (the "Application"). (Compl. ¶ 29.) Neither the Planning Board nor any Town

official notified Global Tower and Northeast that the Application was incomplete within thirty days of the filing or that the Planning Board had or might have additional requests for information. (Id. ¶ 32.)

On May 20, 2013, the Planning Board held its first meeting on the Application. (Id. ¶ 34.) At that meeting, Global Tower and Northeast provided an introductory presentation, which was followed by comments from members of the public. (Id. ¶ 35.) The public comments included commentary from the Belgrade Region Conservation Association ("BRCA"), a local organization that holds conservation easements in the Town of Rome. (Id.) The BRCA publicly expressed its direct opposition to the Application. (Id.) Global Tower and Northeast allege that at least four of the six members of the Rome Planning Board were, at all relevant times, members of BRCA, including the two co-chairs of the Planning Board. (Id. ¶ 36.) In addition, an abutter to the Project, who is also a sibling to a Planning Board member, publicly stated his opposition to the Application. (Id. ¶ 37.) The Complaint alleges that the abutter had been approached by a wireless competitor to discuss the possibility of entering into a lease agreement for a wireless telecommunications tower on property that abuts the Leased Area. (Id.) Next, one of the co-chairs of the Planning Board stated that he did not want to give up the Town's skyline to the Project, and that he believed Global Tower and Northeast were just trying to break into a market that is already satisfactorily served by other wireless service providers. (Id. ¶ 38.) Members of the public also expressed their general dislike of telecommunication towers, and their belief that the Town already had satisfactory wireless service from other competitors. (Id.)

Global Tower and Northeast state that after the May 20th Planning Board meeting, a member of the Planning Board and a member of the public "conducted a joint investigation . . . by driving around Town with a cell phone to see where they could get service," which was not

disclosed to Plaintiffs. (Id. ¶ 40.) Then, the Rome Code Enforcement Officer ("CEO") coordinated with BRCA to produce a "cell service map" in an effort to show that the Town already had service, which was then placed into the Planning Board's record for review in connection with the Application. (Id.)

At the July 8, 2013 meeting of the Planning Board, one of the co-chairs indicated that the Planning Board must be responsive to its citizens whose overwhelming opinions were that no one wanted to look at the proposed telecommunications tower. (Id. ¶ 42.) After discovering that the Planning Board was accepting and reviewing documents from the BRCA and members of the public, Plaintiffs requested those and any other documents being reviewed be disclosed to Plaintiffs. (Id. ¶ 43.) The Planning Board did not respond to the request. (Id.)

On August 12, 2013, the Planning Board discussed the Application without notice to Global Tower or Northeast and without any representative of Global Tower or Northeast present. (Id. ¶ 44.) Global Tower and Northeast learned of the August 12 discussions via a letter that stated the Planning Board's perceived deficiencies in the Application. (Id.) In early October, Global Tower and Northeast again requested that the Planning Board provide all materials under review, but the Planning Board refused. (Id. ¶ 52.)

At the October 14, 2013 Planning Board meeting, the Planning Board voted to hire Richard Comi to assist the Planning Board with RF engineering, scenic impacts and property valuation, but Plaintiffs maintain that Comi is not an RF engineer, has no training in RF engineering and has no accreditations in RF engineering. (Id. ¶¶ 54, 55.) On November 5, 2013, Global Tower and Northeast sent a letter to the Planning Board indicating that they agreed to further extend the Application review period to December 9, 2013. (Id. ¶ 61.)

In a letter dated November 5, 2013, Comi provided his review of the materials sent to him by the CEO, in which he concluded the Application did not justify the need for a 190-foot tower and that the Application did not meet the Wireless Ordinance scenic requirements. (Id. ¶ 62.) Global Tower and Northeast replied with a response prepared by Dan Goulet, a registered professional engineer and Director of RF Services for C-Squared Systems, LLC. (Id. ¶ 63.) Global Tower and Northeast also prepared a written Alternatives Analysis that demonstrated there were no viable alternative sites to fill the significant PCS service coverage gaps. (Id.)

Throughout the course of the proceedings before the Planning Board, Global Tower and Northeast learned that members of the Planning Board were also members of BRCA. (Id. ¶¶ 59, 65.) At the December 9, 2013 Planning Board meeting, all four of the Planning Board members with BRCA membership stated their belief that they did not have a conflict of interest and were not biased. (Id. ¶ 69.) At that same meeting one of the co-chairs reiterated his belief that the communication tower would "defile" the Town's scenery and that nobody in the Town wanted it. (Id. ¶ 70.) He then recused himself for being biased. (Id.) At the conclusion of the December 9 meeting, Global Tower, Northeast and the Planning Board mutually agreed to further extend the Application review period until January 13, 2014. (Id. ¶ 71.)

On January 13, 2014, the Planning Board held another meeting on the Application during which it received further testimonial evidence from Global Tower, Northeast, and their representatives. (Id. ¶ 74.) At that meeting, the Planning Board closed the record and entered into deliberations. (Id. ¶ 76.)

### D. Decision Of The Planning Board

In a letter dated January 23, 2014, legal counsel for the Planning Board provided findings of fact and conclusions of law for the Planning Board to review at its upcoming February 10, 2014

meeting and advised a procedure for the Planning Board to vote on the findings and the requirements in the Wireless Ordinance. (Id. ¶ 79.) Global Tower and Northeast objected to the procedure. (Id. ¶ 80.) However, Global Tower, Northeast and the Planning Board agreed to a final extension of the Application review period to February 10, 2014.

At the February 10, 2014 meeting, the Planning Board adopted findings of fact and conclusions of law concerning the Application. (Compl. ¶ 82.) The findings included but were not limited to:

(1) The Ordinance does not require the Town to accommodate the applicant's 1900 MHZ license, by allowing a greater height or density of towers to compensate for the inferior strength of that signal, compared to an 800 MHZ signal. (Id. ¶ 82.A.)

(2) Numerous members of the public testified at the public hearing and other Planning Board meetings that they already have adequate AT&T coverage in the Town without any problem, including Internet service, and no person testified at the public hearing that they have experienced a lack of coverage or want better coverage. (Id. ¶ 82.D.)

(3) The RF Propagation Maps in the record all show there are substantial service gaps in Rome for PCS technology, which clearly demonstrates the Applicants are not already providing adequate coverage. Application, Section 6, Appendix C; 4G Wireless RF Propagation Maps; C Squared Systems Reports (Dec. 6 & 27, 2013). (Id. ¶ 82.E.)

(4) The Applicant's simulated coverage study shows that with the additional coverage to the Town from the Proposed Tower at 190 Ft. vs. 170 and 150 Ft., a large dead zone will continue to exist on the Mercer Road, which includes the Town Office and Fire Station, and there will still be considerable gaps along Route 225. (Id. ¶ 82.F.)

(5) The Town's consultant, Richard Comi, has asserted that the Applicant has not proven that it cannot use the Hampshire Hill tower site to provide adequate coverage to the Town and the Board agrees with that assessment of the evidence. (Id. ¶ 82.K.)

(6) The Town's consultant concluded that from studies submitted by the Applicant collocating on Hampshire Hill at a height of 270' would provide adequate and the most coverage, compared to the Proposed Tower at 190', as evidenced by the original 800 MHz propagation map at 270' on Hampshire Hill. See Exhibit 1B of the $C_2$ report dated December 27, 2013, compared to the simulated transmission map Exhibit 2: Added 1900 PCS NEWN service at 270 Ft. (Id. ¶ 82.L.)

(7) In their Alternatives Analysis, the Applicants also surveyed the Town for any other structures, such as the former Grange Hall at the intersection of Routes 225 and 27 and the

Rome Fire Station; however, those structures do not have sufficient height to send and receive a PCS signal. Alternatives Analysis at pp. 2-3. (Id. ¶ 82.M.)

(8) The record evidence shows that the location of the telecommunication tower will not only provide adequate coverage to fill the substantial service coverage gaps in Town, see, e.g., RF Propagation Maps of 190' Tower prepared by 4G Wireless and C Squared Systems, but also that it will provide multiple collocation opportunities for other wireless service providers avoiding the need for additional new telecommunication towers in Town. Application, Section 15, Appendix L. (Id. ¶ 82.O.)

The Planning Board determined that all General Project Requirements standards contained in Section 11 of the Wireless Ordinance were met, except for "Height of Towers." The Planning Board believed this standard was not met because the Town was already satisfactorily served by other wireless providers and cellular technology, the Hampshire Hill Tower was a suitable site for Global Tower and Northeast to collocate, and therefore a new telecommunications tower in Town was unnecessary. (Compl. ¶ 84.) In support the Planning Board cited their perception of public opinion as well as Comi's letters that concluded that the Hampshire Hill Tower was adequate for cellular technology. (Id.) After adopting findings and conclusions of law and making determinations on the Application's compliance with the Wireless Ordinance Standards, the Planning Board then conducted a "completeness" review of the Application and found Global Tower and Northeast had provided all Required Documentation except for written documentation regarding the evidence of need for Global Tower and Northeast's telecommunications tower. (Id. ¶ 85.) The Planning Board also found Global Tower and Northeast failed to provide required documentation for any requested waivers, even though Global Tower and Northeast had no current waiver request for the Planning Board to consider at its February 10, 2014 meeting. (Id. ¶ 86.) At the conclusion of the February 10, 2014 meeting, the Planning Board voted to deny the Application. (Id. ¶ 87.)

### F.     Litigation

On March 11, 2014, Global Tower and Northeast filed their Complaint (ECF No. 1) against the Town of Rome and the Planning Board.  Plaintiffs' Complaint asserts nine counts: Count I: Violations of the Telecommunications Act;  Count II: Violations of Plaintiffs' Due Process Rights Pursuant to the United States Constitution; Count III: Violations of Plaintiffs' Due Process Rights Pursuant to the Maine Constitution;  Count IV: Common Law Conflict of Interest;  Count V: Violation of 1 M.R.S.A. § 71, Failure to Disqualify;  Count VI: Common Law Bias; Count VII: Review of Governmental Action, M.R. Civ. P. 80B; Violation of 30-A M.R.S.A. § 3012; Count VIII: Lack of Authority; and, Count IX: Declaratory Judgment.  On April 15, 2014, Defendants moved to dismiss the Complaint (ECF No. 9).

## III.     DISCUSSION

### A.     Count I: Violations of the Telecommunications Act

Under the TCA, the FCC licenses carriers to provide wireless telephone service on a competitive basis.  47 U.S.C. § 332(c).  The statute preserves state and local authority over the placement and construction of facilities, id. § 332(c)(7)(A), subject to five limitations, id. § 332(c)(7)(B); see also National Tower, LLC v. Plainville Zoning Bd. of Appeals, 297 F.3d 14, 19-20 (1st Cir. 2002) (listing the limitations).  The TCA created a federal cause of action for aggrieved parties:  "Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with [the limitations] may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction."  47 U.S.C. § 332(c)(7)(B)(v).

In this case, Plaintiffs assert five claims under the TCA:  (1) the conduct of the Town of Rome and the Planning Board in denying the Application because they believed Plaintiffs could

collocate on an existing tower to provide cellular service in the 800 mHz spectrum constituted unreasonable discrimination among providers of functionally equivalent services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(I) (Compl. ¶ 92); (2) the conduct of the Town of Rome and the Planning Board in denying the Application because they believed competitors were already satisfactorily providing wireless service constituted unreasonable discrimination among providers of functionally equivalent services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(I) (Compl. ¶ 93); (3) the conduct of the Town of Rome and the Planning Board prohibited or had the effect of prohibiting the provision of wireless services because the Planning Board determined that the minimum number of telecommunication towers needed in the Town was zero, that the Town was already satisfactorily served and that the Plaintiffs could collocate on an existing tower in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II) (Compl. ¶ 94); (4) the conduct of the Town of Rome and the Planning Board constituted an unreasonable delay because it failed to issue a written decision within the mutually agreed upon review period in violation of 47 U.S.C. § 332(c)(7)(B)(ii) (Compl. ¶ 95); and, (5) the conduct of the Town of Rome and the Planning Board constituted a failure to issue a written decision supported by substantial evidence in violation of 47 U.S.C. § 332(c)(7)(B)(iii) (Compl. ¶ 96). With the exception of the allegation contained within paragraph 95 of the Complaint, each of these allegations is premised upon and requires that there be a final action for the Court to review. See, e.g., New Cingular Wireless PCS, LLC v. Town of Stoddard, N.H., 853 F. Supp. 2d 198, 207 (D.N.H. 2012) (finding that claims under §§ 332(c)(7)(B)(i)(II) and 332(c)(7)(B)(iii) require that the local government have made a final decision prior to federal court review).

Before turning to whether the denial by the Town of Rome Planning Board constitutes a "final action," the Court turns to briefly address the allegations contained in paragraph 95 of the

Complaint. There, Plaintiffs allege that the "conduct of the Rome Planning Board constitutes an unreasonable delay to act on [Global Tower and Northeast's] Application because it failed to issue a written decision within the mutually agreed upon review period in violation of 47 U.S.C. § 332(c)(7)(B)(ii)." (Compl. ¶ 95.) Despite this allegation, Plaintiffs expressly allege that the Planning Board "adopted findings of fact and conclusions of law concerning the Application" prior to the expiration of the agreed upon review period and then detail twenty-four of those findings and conclusions. (See Compl. ¶¶82.A.-82.W.) Therefore, Plaintiffs' claim in paragraph 95 of the Complaint is belied by their factual own allegations.[5] See Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals, 297 F.3d 14, 20-21 (1st Cir. 2002) (setting forth the general standards for written decisions under the TCA and noting that a written decision need not contain "formal findings of fact or conclusions of law"). While Plaintiffs also allege that the "Planning Board did not issue any written decision," (id. ¶ 87.) the Court need not accept the truth of this conclusory allegation. See Iqbal, 556 U.S. at 679. Instead, the well pled allegations in the Complaint require that the claim in paragraph 95 of the Complaint be dismissed.

Turning to the finality requirement, Defendants argue that the remainder of Count I of the Complaint must be dismissed because there has been no "final action" within the meaning of the TCA. (Motion To Dismiss (ECF No. 9) at 6-10.) Although the TCA does not define "final action," the First Circuit has directly addressed what qualifies as a final action under the TCA. See Omnipoint Holdings, Inc. v. City of Cranston, 586 F.3d 38, 45-47 (1st Cir. 2009). In Omnipoint Holdings, Inc. v. City of Cranston, after two public hearings and recommendations from the City of Cranston Planning Commission, the Cranston Zoning Board of Review denied plaintiff's

---

[5] To the extent that Plaintiffs would have this Court construe paragraph 95 of the Complaint to allege that the Town of Rome violated § 332(c)(7)(B)(ii) because no final action was reached by the Town of Rome Board of Appeals within the required timeframe, that position contradicts Plaintiffs' factual allegations and legal arguments.

application for a variance to construct a tower for wireless services. Defendants argued that the denial by the Zoning Board of Review was not a final action under the TCA because limited state court review was available. 586 F.3d 38, 46 (1st Cir. 2009). The First Circuit rejected defendants' argument and found that a final action is "one that marks the consummation of the instrumentality's decisionmaking process." Id. at 47 (emphasis in original). In that case, "there [was] no dispute that the zoning board is a discrete 'instrumentality' of Cranston, separate and distinct from the Rhode Island Superior Court. The parties agree[d] Cranston's zoning board had concluded its decisionmaking process before that instrumentality and could take no further action. The zoning board's decision was final." Id. In Omnipoint Holdings, Inc., because the instrumentality, the town, had reached a final decision, there was no requirement to seek state judicial review of the zoning board's decision prior to filing suit in federal court.

The Seventh Circuit similarly addressed what constitutes a final action under the TCA in Sprint Spectrum L.P. v. City of Carmel, Indiana, 361 F.3d 998 (7th Cir. 2004). In Sprint Spectrum L.P., the Seventh Circuit examined the Supreme Court's guidance on when a land use challenge is ripe for federal court review. The Seventh Circuit, quoting Williamson County v. Regional Planning Commission v. Hamilton Bank, 473 U.S. 172 (1985), stated that "zoning authorities must be given an opportunity to 'arrive[] at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question' before its owner has a ripe challenge." Sprint Spectrum L.P., 361 F.3d at 1002 (quoting Williamson County, 473 U.S. at 191). In Sprint Spectrum L.P., the board of zoning appeals upheld the revocation of the wireless provider's building permit and held that the provider was required to seek a special use permit and subdivision plat approval from the local plan commission. Id. at 1000. Instead of taking those steps, the wireless provider filed suit in federal court for violations of the TCA. Id. The Seventh Circuit

determined that because the wireless provider had further recourse before the local zoning authorities, there was no final action to bring before the federal court. Id. at 1004. While the wireless provider need not exhaust all state judicial remedies, it had to allow "the local authorities to act with finality before pursuing a claim in federal court." Id. at 1001 n.2, 1004. The First Circuit has stated that Sprint Spectrum is in accord with its own interpretation of what constitutes a final action under the TCA. Omnipoint Holdings, Inc., 586 F.3d at 47.

This Court has previously considered what constitutes a "final action" under the TCA in Mariner Tower II, LLC v. Town of Topsham, 2:10-CV-314-JHR, 2011 WL 5191165 at **4-5 (D. Me. Oct. 31, 2011). In that case, plaintiff applied to the Town of Topsham for a conditional use permit to construct a new transmission tower. Id. at *3. The Topsham Planning Board denied the application, and the plaintiff neither filed a request for a rehearing with the Topsham Planning Board nor filed an appeal of the decision with the Topsham Board of Appeals. Id. Defendants argued that the town had taken no final action because plaintiff failed to appeal the denial to Topsham Board of Appeals. Id. at *5. Applying the First Circuit's guidance in Omnipoint Holdings and Maine state law, the Court found that there was no final action because of the failure to appeal the denial of the Topsham Planning Board to the Topsham Board of Appeals. Id. at **6-7.

Similarly in this case, Defendants argue that the decision of the Planning Board was not a final action under the TCA because Global Tower and Northeast had the right to appeal the denial to the Rome Board of Appeals but failed to do so. Plaintiffs argue that the Planning Board's decision is the controlling final decision and that the Rome Board of Appeals had no authority to hear any appeal challenging a Planning Board decision under the Wireless Ordinance. First, the Town of Rome's Board of Appeals is a function of Maine law and the Town's home rule authority.

Section 2691 of Maine Title 30-A provides that a "municipality may establish a board of appeals under its home rule authority" and further details the establishment, organization, procedure and jurisdiction for such a board of appeals. 30-A M.R.S.A. § 2691. Section 4 provides the limitations on a board of appeals jurisdiction:

> Any municipality establishing a board of appeals may give the board the power to hear any appeal by any person, affected directly or indirectly, from any decision, order, regulation or failure to act of any officer, board, agency or other body when an appeal is necessary, proper or required. No board may assert jurisdiction over any matter unless the municipality has by charter or ordinance specified the precise subject matter that may be appealed to the board and the official or officials whose action or nonaction may be appealed to the board. . . . Any such decision that is not timely appealed is subject to the same preclusive effect as otherwise provided by law. Any board of appeals shall hear any appeal submitted to the board in accordance with Title 28-A, section 1054.

Id. § 2691(4). In this case, Section 16 of the Town of Rome's Wireless Ordinance specifically provides that "[a]dministrative appeals and variance applications submitted under this Ordinance shall be subject to the standards and procedures established by the Town of Rome Board of Appeals." (Wireless Ordinance, Section 15.B (ECF No. 9-1) at PageID # 94.) Thus, the Court finds that the Board of Appeals had jurisdiction to hear any appeal from a decision of Town of Rome Planning Board rendered pursuant to the Wireless Ordinance. See Eliot Shores, LLC v. Town of Eliot, 9 A.3d 806, 807-08 (Me. 2010) (stating that "[w]hether a local board of appeals has jurisdiction is a question of law that must be ascertained from an interpretation of statutes and local ordinances" (internal quotations and citations omitted)).

As a result, the instrumentality – the Town of Rome – had not reached a final decision on Global Tower and Northeast's Application. Rather, as in Sprint Spectrum, L.P. and Mariner Tower II, LLC, Global Tower and Northeast had further recourse before the Town of Rome because they could have appealed to the Town Board of Appeals and potentially garnered a different result. See Sprint Spectrum, L.P., 361 F.3d at 1004 (postulating that "until Sprint is told definitely whether or

not it is permitted to install an antenna and equipment shelter, it is mere speculation whether it even has an injury to complain of"). There is no dispute that Plaintiffs failed to take that step. Instead, twenty-eight days after the Planning Board voted to deny the Application, Plaintiffs filed suit in federal court. (See Compl. ¶ 87.) Requiring Plaintiffs to first seek recourse before the Town of Rome's Board of Appeals is in accord with the requirement that a case be ripe for federal court review and the policies of the TCA and the state of Maine. As stated by the Seventh Circuit: "[t]hese are precisely the types of issues that should be presented first to the local land use authority, which has a better understanding of the local ordinances." Sprint Spectrum L.P., 361 F.3d at 1004; see also Wister v. Town of Mount Desert, 974 A.2d 903, 910 (Me. 2009) (stating the policy that "issues related to municipal permits, approvals or variances be first addressed to a municipal board of appeals"). Therefore, to the extent Count I asserts violations of § 332(c)(7)(B)(i)(I), § 332(c)(7)(B)(i)(II) and § 332(c)(7)(B)(iii), there has been no final action for this Court to review. Count I is DISMISSED WITHOUT PREJUDICE.[6]

**B.      Count II: Violations Of Plaintiffs' Due**
**Process Rights Under The United States Constitution**

Count II of the Complaint asserts that the Planning Board's review and denial of Global Tower and Northeast's Application violated their procedural and substantive rights to due process under the United States Constitution. Defendants argue that Count II must be dismissed because, although it is not styled as such, Count II attempts to seek redress for violations of the TCA through 42 U.S.C. § 1983, but the TCA provides the exclusive remedy for Plaintiffs' alleged harms.

---

[6] To the extent Plaintiffs are able to reinitiate proceedings before the Planning Board or file an appeal with the Board of Appeals, and do not garner a different result, Plaintiffs may be able to pursue TCA claims before this Court. The Court takes no position on the merits of a further lawsuit. The Court notes that given the silence of the Wireless Ordinance on a time for appeal, Plaintiffs had 60 days under Maine law to appeal the Planning Board decision, except where special circumstances exist such that the 60 day limitation would result in "a flagrant miscarriage of justice." Keating v. Zoning Bd. of Appeals of City of Saco, 325 A.2d 521, 525 (Me. 1974).

In Count II, Plaintiffs allege various procedural and substantive wrongdoings on the part of the Planning Board in denying their Application. For example, Plaintiffs allege that the Planning Board is not a lawfully constituted municipal body of the Town of Rome, that the Planning Board was biased and that independent investigations were conducted by the Planning Board without notice to Plaintiffs. (See Compl. ¶¶ 100, 103, 107.) Plaintiffs allege that these wrongdoings amount to violations of their procedural and substantive rights to due process under the United States Constitution. 42 U.S.C. § 1983 provides a mechanism for asserting a cause of action for "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal] laws." 42 U.S.C. § 1983. In opposing the Motion to Dismiss, Plaintiffs argue that they are not asserting a claim under § 1983 but that their claims are "based on their separate constitutional rights to due process of law." (Pls.'Opposition To Defs.' Mot. To Dismiss (ECF No. 10) at 14.) In support, Plaintiffs site Creative Environments, Inc. v. Estabrook, 680 F.2d 822 (1st Cir. 1982) and Licari v. Ferruzzi, 22 F.3d 344 (1st Cir. 1994) in support. However, in each of those cases arising out of land use disputes, the plaintiffs asserted violations of their due process rights via section 1983 claims. Creative Environments, Inc., 680 F.2d at 823; Licari, 22 F.3d at 345.

To the extent that Plaintiffs seek to reassert the claims available under the TCA via section 1983 claims, those claims must be dismissed. In City of Ranchero Palos Verdes, California v. Abrams, the Supreme Court held that "[t]he rights § 332(c)(7) created may not be enforced under § 1983[.]" 544 U.S. 113, 127 (2005). Alternatively, to the extent that Plaintiffs seek to assert violations of their due process rights, separate and distinct from any limitations on local zoning authority available via a § 332(c)(7) claim, the Court finds those claims also must be dismissed. "Procedural due process guarantees that a state proceeding which results in a deprivation of

property is fair, while substantive due process ensures that such state action is not arbitrary and capricious." Licari, 22 F.3d at 347 (internal citations and quotations omitted). As Plaintiffs acknowledge, the First Circuit has set the bar for stating a claim of violation of due process in land use disputes high and "run of the mill" disputes will not suffice. Id. at 350. The reason for this is plain:

> A federal court, after all, "should not . . . sit as a zoning board of appeals." Every appeal by a disappointed developer from an adverse ruling by a local [] planning board necessarily involves some claim that the board exceeded, abused or "distorted" its legal authority in some manner, often for some allegedly perverse (from the developer's point of view) reason.

Creative Environments, Inc. v. Estabrook, 680 F.2d 822, 833 (1st Cir. 1982) (quoting Village of Belle Terre v. Boraas, 416 U.S. 1, 12 (1974) (Marshall, J., dissenting)). In short, assuming the truth of the Complaint's well-pleaded facts and drawing all reasonable inferences in Plaintiffs' favor, the allegations simply do not rise to the level of a due process violation. The proceedings that led to the Planning Board's denial instead sound more in line with the "run of the mill" disputes found insufficient by the First Circuit. See Creative Environments, Inc., 680 F.2d at 833. Therefore, Count II must be DISMISSED WITH PREJUDICE.

## C. Plaintiffs' Remaining Claims

Plaintiffs also assert state-law claims for violations of Plaintiffs' due process rights under the Maine Constitution (Count III), conflict of interest (Count IV), violations of 1 M.R.S.A. § 71 (Count V), bias (Count VI), violations of Maine Rule of Civil Procedure 80B and 30-A M.R.S.A. § 3012 (Count VII) and lack of authority (Count VIII).[7] In light of the dismissal of Counts I and

---

[7] In Count VIII, Plaintiffs allege that they have the right to inquire into the authority that the Rome Planning Board purports to hold in adjudicating the property rights of Plaintiffs and that the authority of the Planning Board is vulnerable to review pursuant to 28 U.S.C. § 1651. (Compl. ¶¶ 154, 155.) Section 1651 provides that: "[A]ll courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Id. The Supreme Court has indicated that the All Writs Act "authorize[s] a federal court to issue such commands as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." Pennsylvania Bureau

II, which provided the Court with the source of subject matter jurisdiction,[8] the Court declines to exercise supplemental jurisdiction over the remaining state-law claims.

"As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims." Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995). "The factors that are supposed to guide the Court's consideration of whether to dismiss pendent claims include comity, judicial economy, convenience and fairness to the litigants." Kropp v. Maine Sch. Admin. Union # 44, Civil No. 06–81–P–S, 2007 WL 551516, at *20 (D. Me. Feb. 16, 2007). Were the Court well-positioned to determine the remaining state-law claims and thus "spar[e] a busy state court from having to reinvent the wheel," id., it may consider exercising supplemental jurisdiction. It is not well-positioned. The crux of this case is action by a local zoning board and federal courts have been repeatedly cautioned that they "should not sit as a zoning board of appeals." Creative Environments, Inc., 680 F.2d at 833. Accordingly, the Court declines to exercise supplemental jurisdiction and DISMISSES WITHOUT PREJUDICE Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(c). See Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256-57 (1st Cir. 1996).

---

of Correction v. U.S. Marshals Serv., 474 U.S. 34, 40 (1985) (internal citations and quotations omitted). This Act does not provide the Court with an independent source of jurisdiction over this or other claims. Similarly, in Count IX, Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201. However, the Declaratory Judgment Act creates a method of judicial remedy, but it does not expand a federal court's subject matter jurisdiction. See, e.g., Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-72 (1950); Harvey v. Machigonne Benefits Administrators, 128 F. Supp. 2d 51, 53 (D. Me. 2001).

[8] To the extent Plaintiffs have made a belated, passing suggestion that there may be diversity jurisdiction over the state law claims, there is no assertion of diversity jurisdiction in the Complaint. (See Pls.' Opp'n at 17 n.15; Compl. ¶¶ 6 &7.)

## IV.     CONCLUSION

For the aforementioned reasons, the Court GRANTS the Town of Rome's Motion To Dismiss (ECF No. 9).  Count I and Plaintiffs' state-law claims are DISMISSED WITHOUT PREJUDICE and Count II is DISMISSED WITH PREJUDICE.  In addition, Plaintiffs' Motion For Leave To File A Surreply Memorandum (ECF No. 13) and Plaintiffs' Motion To Strike Documents Submitted With Defendants' Reply (ECF No. 14) are MOOT.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 31st day of July, 2014.